[No. B169632. Second Dist., Div. One. Mar. 24, 2005.]

ERNESTINE HOOD et al., Plaintiffs and Appellants, v.
COMPTON COMMUNITY COLLEGE DISTRICT et al., Defendants and
Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

956

**Counsel**

Law Offices of Stanley R. Raskin and Stanley R. Raskin for Plaintiffs and Appellants.

Law Offices of Dennis J. Walsh and Dennis J. Walsh for Defendants and Appellants.

**Opinion**

**SUZUKAWA, J.**[*]—Plaintiffs Ernestine Hood, Margie M.L. Miles, and Manette Wesley, who were classified employees assigned to the staff of the Personnel Commission of the Compton Community College District (Personnel Commission), sued the Compton Community College District (District) for constructive discharge and other employment-related claims. The District obtained summary judgment on the erroneous theory that the Personnel Commission, and not the District, was the plaintiffs' employer. The plaintiffs then sued the Personnel Commission, which obtained summary judgment on the theories that: (1) plaintiffs had failed to file a tort claim with the Personnel Commission pursuant to the

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Government Code (Gov. Code, § 900 et seq.); and (2) plaintiffs had failed to exhaust their administrative remedies with regard to their claims against the Personnel Commission.

In the published portions of the opinion (all but parts II and III), we reverse the summary judgment for the District because under Education Code section 88084,[1] the District is the employer of the Personnel Commission's staff, who are classified employees of the District. Given our determination that plaintiffs are classified employees of the District, we dismiss plaintiffs' appeal from the summary judgment for the Personnel Commission as moot.

I

## PLAINTIFFS' APPEAL FROM THE SUMMARY JUDGMENT FOR THE DISTRICT

A. *Background*

The second amended complaint (the operative pleading with regard to the District's motion for summary judgment or, alternatively, summary adjudication) was directed solely against the District as plaintiffs' employer. The second amended complaint alleged causes of action against the District for: (1) constructive discharge in violation of public policy (first cause of action); (2) constructive discharge in retaliation for reporting a violation of public policy (second cause of action); (3) sex discrimination and harassment (fourth cause of action); and (4) intentional infliction of emotional distress (fifth cause of action).[2]

The trial court granted the District's motion for summary judgment in its entirety and entered judgment for the District. On the first two causes of action for constructive discharge, the trial court held that the District was not plaintiffs' employer as a matter of law. The trial court concluded the District was not liable, as a matter of law, for constructive discharge because the Personnel Commission was plaintiffs' employer.

---

[1] Unless otherwise indicated, all further statutory references are to the Education Code.

[2] According to the District, the second amended complaint's third cause of action for violation of due process was dismissed on demurrer and is not at issue on appeal. Plaintiffs, on the other hand, do not explicitly mention the dismissal of the due process violation claim in their opening brief. Instead, plaintiffs state that "[a]ll prior demurrers were overruled or cured by amendment . . . ." We assume from plaintiffs' failure to discuss the due process violation claim in their opening brief that the cause of action has been abandoned.

On the fourth cause of action for sex discrimination/harassment, the trial court concluded that plaintiffs had failed to meet their burden under the burden-shifting procedure of Code of Civil Procedure section 437c, subdivision (p)(2).[3] In the District's words, the trial court granted summary adjudication on the sex discrimination/harassment claim because plaintiffs "admitted to not being sexually harassed and there was no evidence of disparate treatment by the DISTRICT."

Similarly, the trial court granted summary adjudication on the fifth cause of action for emotional distress after finding that plaintiffs had failed to meet their burden under the burden-shifting procedure of Code of Civil Procedure section 437c, subdivision (p)(2). According to the District, summary adjudication was granted on the emotional distress claim because plaintiffs "did not address that cause of action in their opposition and failed to raise a triable issue of material fact . . . ."

## B. *Plaintiffs' Claims Against the District for Constructive Discharge*

All three plaintiffs served on the Personnel Commission's staff: plaintiff Miles as director of classified personnel and secretary to the Personnel Commission; plaintiff Hood as the Personnel Commission's personnel analyst; and plaintiff Wesley as the Personnel Commission's senior secretary (confidential).

The trial court concluded that the District could not be held liable, as a matter of law, for constructive discharge because plaintiffs, as members of the Personnel Commission's staff, were employed by the Personnel Commission and not by the District. Section 88084, however, expressly provides that a personnel commission's staff shall "be *classified employees of the community college district* and shall be accorded all the rights, benefits, and burdens of any other classified employee serving in the regular service of the district, including representation by the appropriate exclusive representative, if any." (§ 88084, italics added.) As we will discuss below, although a personnel commission has supervisory powers over its staff's commission-related activities (§ 88084), its staff members are nonetheless "classified employees of the

---

[3] "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

community college *district.*" (§ 88084, italics added.) We conclude that under section 88084, the district is the employer of the Personnel Commission's staff.

### 1. *The Creation and Appointment of a Personnel Commission*

■ When a community college district elects to adopt the merit system (see § 88050 et seq.), which is a form of civil service applicable to classified (noncertified) employees (§ 88076),[4] the district must appoint a personnel commission of either three (as in this case) or five members (§§ 88063–88066).[5] In the case of a three-member personnel commission, "[o]ne member . . . shall be appointed by the governing board of the district and one member, nominated by the classified employees of the district, shall be appointed by the governing board of the district. Those two members shall, in turn, appoint the third member. . . ." (§ 88065.)

In this case, the Personnel Commission was comprised of three appointed members—Kalem Aquil, F.C. Herbert, and May Thomas. One of the appointed commission members, Aquil, was named as an individual defendant in the original complaint but is no longer a party to the action.

Unlike the personnel commission's staff, who by law are designated as classified employees of the district (§ 88084), the law provides that during their terms of service, members of the personnel commission (in this case, Aquil, Herbert, and Thomas) shall *not* be employees of the district, members

---

[4] "(a) The commission shall classify all employees and positions within the jurisdiction of the governing board or of the commission, except those which are exempt from the classified service, as specified in subdivision (b). The employees and positions shall be known as the classified service. 'To classify' shall include, but not be limited to, allocating positions to appropriate classes, arranging classes into occupational hierarchies, determining reasonable relationships within occupational hierarchies, and preparing written class specifications.

"(b) The following positions and employees are exempt from the classified service:

"(1) Academic positions.

"(2) Part-time playground positions.

"(3) Full-time students employed part time.

"(4) Part-time students employed part time in any college work-study program or in a work experience education program conducted by a community college which is financed by state or federal funds.

"(5) Apprentice positions.

"(6) Positions established for the employment of professional experts on a temporary basis for a specific project by the governing board or by the commission when so designated by the commission. [¶] . . . [¶]" (§ 88076.)

[5] "In any district that has adopted the provisions of this article there shall be appointed a personnel commission composed of either three or five members. The governing board of any community college district, by a majority vote, and with the agreement of the existing personnel commission of the district, if that commission is in existence, may elect to increase the membership of the personnel commission from three to five members . . . ." (§ 88063.)

of the governing board,[6] or members of the county board of education. (§ 88064, subd. (b).) Members of the personnel commission receive compensation which is limited in smaller districts to $50 per meeting and $250 per month (§ 88070), and in larger districts to $100 per meeting and $500 per month (§ 88071).

### 2. *The Governing Board's Role Regarding the Personnel Commission and Classified Employees*

■ By state law, the district's governing board must provide the personnel commission with office space (§ 88072), and must include the personnel commission's budget (once it is approved by the county superintendent of schools) within the district's own budget (§ 88073).[7]

■ Pursuant to statute, the district's governing board sets and pays the compensation of classified employees, which by definition includes the staff of the personnel commission. (§§ 88084, 88087, 88160.)[8] In determining the amount of compensation to be paid to classified employees, the governing board considers the personnel commission's salary recommendations, which the governing board may approve, amend, or reject. (§ 88087.) The governing board also controls the leaves of absence, vacations, and sick leave taken by classified employees. (§§ 88190, 88191.)

### 3. *Jurisdictional Roles of the District and the Commission in Disciplinary Matters Involving Classified Employees*

■ The personnel commission writes procedural rules for the governing board to follow in matters including hiring, promotion, demotion, transfer, and dismissal of classified employees. (§§ 88080, 88081.) Although disciplinary charges against classified employees are initiated by the commission's

---

[6] In this opinion, we use the term "governing board" to refer to the District's governing board.

[7] Each year, the personnel commission presents its proposed budget at a public hearing attended by the governing board and district administration representatives. (§ 88073.) After the public hearing, the commission adopts a budget which is then forwarded to the county superintendent of schools. (*Ibid.*) If the superintendent proposes to reject the personnel commission's budget, the superintendent must conduct another public hearing attended by the personnel commission and the governing board. (*Ibid.*) After that hearing, the superintendent may reject the personnel commission's budget (in which case the budget of the preceding year shall control), or reach an agreement with the personnel commission for an amended budget. (*Ibid.*) Once the superintendent approves the personnel commission's budget, it "shall be included by the governing board in the regular budget of the community college district." (*Ibid.*)

[8] The evidence submitted by plaintiffs below is consistent with the law requiring districts to pay the salaries of classified employees. Plaintiffs provided a declaration and documentary evidence to the effect that their paychecks were issued by the District and that their W-2 wage and tax statements listed the District as their employer.

personnel director (§ 88123), it is the governing board that decides those charges in the first instance. When the governing board suspends, demotes, or dismisses a permanent classified employee, the employee may appeal the governing board's decision to the personnel commission. (§ 88124.) On appeal, the commission may sustain the employee and order reinstatement with backpay, or may modify (but not increase) the governing board's disciplinary action. (§ 88126.) The governing board may not review the personnel commission's decision on appeal (§ 88125), which is binding on the board (§ 88126).

■ The different disciplinary roles assigned to the governing board and the personnel commission are jurisdictional in nature. A personnel commission that presumes to decide disciplinary charges against a classified employee *before* the governing board has ruled on the matter in the first instance will have acted in excess of its limited jurisdiction to review the governing board's disciplinary rulings. In *California Sch. Employees Assn. v. Personnel Commission* (1970) 3 Cal.3d 139 [89 Cal.Rptr. 620, 474 P.2d 436], which involved an analogous statutory scheme applicable to elementary and secondary education school districts and personnel commissions, the court stated, "We must conclude that District's board of trustees had exclusive jurisdiction to dismiss Mrs. Keidel, and that Commission's jurisdiction was appellate in nature and limited to reviewing prior board action. In the instant case, District's board resolved to dismiss Mrs. Keidel *after* Commission had announced its decision adjudging her dismissed from service. However, in the absence of a prior board dismissal, Commission lacked jurisdiction to act." (*Id.* at p. 144, fn. omitted.)

### 4. *The Limited Delegation to the Personnel Commission of Supervisory Powers Over Its Staff Employees*

In general, the governing board has supervisory powers over all classified employees. Section 88009 states that "Governing boards shall fix and prescribe the duties to be performed by all persons in the classified service and other nonacademic positions of the community college district, except those persons employed as a part of a personnel commission staff . . . ."

■ Members of the personnel commission staff are to be supervised by the personnel commission when they are performing functions related to the functions of the commission. By law, the personnel commission appoints its own personnel director and other members of its own staff. (§ 88084.) The personnel commission, and not the governing board, "shall supervise the activities of those employees that are performed as a part of the functions of the commission." (*Ibid.*) In this manner, the Legislature has carved a limited exception to the general rule that the governing board "shall fix and prescribe the duties to be performed by all" classified employees. (§ 88009.)

### 5. *Summary Judgment Should Not Have Been Granted on the Basis That Plaintiffs Were Not District Employees*

The trial court granted the District's motion for summary adjudication on the constructive discharge cause of action based on its determination that plaintiffs were employed by the Personnel Commission and not by the District. This was erroneous as a matter of law. As stated above, section 88084 expressly provides that commission staff members are "*classified employees of the community college district . . . .*" (§ 88084, italics added.) We conclude that plaintiffs, who all worked on the Personnel Commission staff, were classified employees of the District as a matter of law under section 88084, notwithstanding the Personnel Commission's limited supervisory powers over its staff.

Although the parties have cited no cases exactly on point, plaintiffs rely upon *United Public Employees v. Public Employment Relations Bd.* (1989) 213 Cal.App.3d 1119 [262 Cal.Rptr. 158] (*United Public Employees*), which they claim is analogous to this case, for the proposition that they were jointly employed by the District and the Personnel Commission. *United Public Employees* is distinguishable, however, because it involved a community college district whose boundaries were "conterminous with the boundaries of a city and county[.]" (§ 88137; see *United Public Employees, supra,* 213 Cal.App.3d at p. 1125.)[9] Under section 88137, classified employees of such districts are governed by the city charter's provisions for a merit system of employment, "provided, however, that the governing board of the district shall have the right to fix the duties of all of its employees." (§ 88137.) Construing the relevant statutes together, the court concluded in *United Public Employees* that the plaintiffs were jointly employed by the city and the district: "The general language of . . . sections 88000 and 88137 seems to mandate that San Francisco is the employer of these employees, while the proviso adds that the District can also be their employer." (*United Public Employees, supra,* 213 Cal.App.3d at p. 1128.)

In this case, the District does not have boundaries coterminous with the boundaries of a city and county that provides in its charter a merit system for its classified employees. Moreover, the Personnel Commission in this case is not a municipal civil service commission, but is a three-member panel of

---

[9] "In every community college district conterminous with the boundaries of a city and county, employees employed in nonacademic positions shall be employed, if the city and county has a charter providing for a merit system of employment, pursuant to the provisions of the charter providing for the system and shall, in all respects, be subject to, and have all rights granted by, those provisions; provided, however, that the governing board of the district shall have the right to fix the duties of all of its employees." (§ 88137.)

appointees who receive limited compensation per meeting and per month. Accordingly, section 88137 does not apply to this case and we do not rely upon *United Public Employees* as authority for the proposition that plaintiffs are jointly employed by the District and the Personnel Commission.

■ While *United Public Employees* is, therefore, distinguishable, it is nevertheless helpful to our analysis on the topic of statutory construction. As explained in *United Public Employees,* in reading statutes "an overriding principle . . . is that the individual portions of a statute should be harmonized with each other and the entire statute should be harmonized with the body of law of which it forms a part. [Citations.]" (*United Public Employees, supra,* 213 Cal.App.3d at p. 1127.) In this case, the individual portions of section 88084 should be harmonized with each other and with the body of law to which the statute belongs.

In one part, section 88084 states that the personnel commission "shall supervise the activities of those employees that are performed as a part of the functions of the commission." (§ 88084.) In another part, section 88084, in referring to the employees on the personnel commission's staff, states that "[t]hese employees shall be . . . classified employees of the community college district and shall be accorded all the rights, benefits, and burdens of any other classified employee serving in the regular service of the district . . . ." (*Ibid.*)

■ In this case, the trial court's legal determination—that the District does not employ the Personnel Commission's staff—is erroneous because it effectively negates and renders superfluous section 88084's pronouncement that the personnel commission's staff are classified employees of the community college district, and are entitled to all the rights, benefits, and burdens of any other classified employee. By negating those portions of section 88084, the trial court violated the statutory rule of construction " 'that effect be given, if possible to every word, clause and sentence. [Citation.] [The trial court also violated the] corollary, [that] a statute should be construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another.' [Citation.]" (*United Public Employees, supra,* 213 Cal.App.3d at p. 1127.)

■ " ' " 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' " ' (*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492, 1499 [69 Cal.Rptr.2d 880], quoting *In re Jose A.* (1992) 5 Cal.App.4th 697, 701–702 [7 Cal.Rptr.2d 44].)" (*People v. Franz* (2001) 88 Cal.App.4th 1426,

1440 [106 Cal.Rptr.2d 773].) Had the Legislature intended to preclude employees on the personnel commission's staff from being classified employees of the district, it knew how to do so. In section 88064, subdivision (b), for example, the Legislature expressly said that members of the personnel commission shall not be employees of the district. In section 88084, on the other hand, the Legislature expressly said that employees on the personnel commission's staff shall be classified employees of the district.

The District's reliance upon *Personnel Com. v. Board of Education* (1990) 223 Cal.App.3d 1463 [273 Cal.Rptr. 288] (*Lynwood*), is misplaced. In *Lynwood*, a school district's personnel commission petitioned for a writ of mandate to overturn the governing board's decision to reduce the position of the personnel commission's personnel director from full-time to half-time. Citing section 45109, which, like section 88009, delegates limited supervisory powers to the personnel commission over its staff members, the *Lynwood* court concluded "that the Board lacks authority to alter the workweek of the personnel director . . . ." (*Lynwood, supra,* 223 Cal.App.3d at p. 1468.)

We distinguish *Lynwood,* however, because it did not address the issue which is before us, namely, whether a personnel commission's staff members are classified employees of the district. Having failed to address that issue, *Lynwood* is not relevant to our decision in this case. " 'Fundamentally, a decision is not authority for a proposition it does not consider and resolve.' (*Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1806 [23 Cal.Rptr.2d 80].)" (*Personnel Com. v. Barstow Unified School Dist.* (1996) 43 Cal.App.4th 871, 881 [50 Cal.Rptr.2d 797] (*Barstow*).)

In addition, the overall validity of the *Lynwood* decision was called into question in *Barstow*, which held that personnel commissions lack standing to sue, which was another point not addressed in *Lynwood*. (See *Barstow, supra,* 43 Cal.App.4th at p. 879 ["The merit system statutes contain no general provision authorizing a personnel commission to sue, nor do they include any specific provision authorizing a commission to take legal action to challenge decisions of the district concerning the employment of classified employees or the contracting out of work."].) Under *Barstow's* analysis of standing, the personnel commission's writ of mandate petition against the district in *Lynwood* should have been dismissed for lack of standing. While section 72000, subdivision (a) provides that "[t]he district and its governing board may sue and be sued," there is no similar provision authorizing the personnel commission to sue and be sued. The statutory omission was, we believe, intentional. (See *People v. Franz, supra,* 88 Cal.App.4th at p. 1440.)

Had *Barstow* limited its discussion of *Lynwood* to the issue of a personnel commission's lack of standing to sue the district, we would have no quarrel

with its analysis. *Barstow* went on, however, to remark that *Lynwood* involved a personnel commission's staff member who was employed by the personnel commission, whereas *Barstow* involved transportation employees who were employed by the district. Elaborating on this supposed distinction between employers, *Barstow* stated, in dicta, that *Lynwood* "stands at most for the proposition that a personnel commission properly may litigate matters relating to the employment of its own employees. Because the personnel director in that case was an employee of the commission, the board's action in reducing his level of service directly affected the commission's interests. In the present case, the transportation employees who were laid off were employees of the District, not the Commission." (*Barstow, supra,* 43 Cal.App.4th at p. 881.)

We believe *Barstow* went too far in assuming, without benefit of any analysis, that personnel commission staff members are employees of the personnel commission and not of the district. *Barstow* ignored the fact that section 45264 (which applies to elementary and secondary school districts and is similar to section 88084) states that members of a personnel commission's staff shall be classified employees of the school *district. Barstow* also ignored the fact that *Lynwood* neither considered nor decided whether personnel commission staff members are employed by the commission or by the district. *Lynwood* said nothing on that point and, in our view, *Barstow* erroneously distinguished *Lynwood* on the basis of an issue neither considered nor resolved in *Lynwood.*

Other than *United Public Employees,* which we distinguished earlier, we are aware of no published decision that has considered whether the staff members of a community college district's personnel commission are employees of the district or of the personnel commission. The lack of cases on point is less significant, however, given that section 88084 conclusively establishes that members of a personnel commission's staff are classified employees of the district. Nothing in the cases cited by the District compels us to reach any other conclusion. While the District relies heavily upon plaintiffs' deposition testimony regarding their states of mind as to whether they were employed by the District or by the Personnel Commission, such testimony is irrelevant (as well as inconclusive) due to the legal pronouncement in section 88084 that employees of the personnel commission's staff are, by definition, classified employees of the district.

Based on our legal determination that plaintiffs were classified employees of the District under section 88084, we conclude the District was not entitled to summary adjudication on the constructive discharge causes of action.

C. *Plaintiffs' Sex Discrimination/Harassment Claim Against the District*

According to the District, the trial court granted summary adjudication on the sex discrimination/harassment claim because plaintiffs "admitted to not being sexually harassed and there was no evidence of disparate treatment by the DISTRICT." While the record contains no written explanation for the trial court's ruling, the reporter's transcript contains the following oral explanation: "As to the fourth cause of action for sexual harassment, the facts are that the [District] is not the employer of the plaintiff. When plaintiff admits to not being sexually harassed, but being treated disparately, the statement is not supported by the facts or the evidence and, as such, Compton Community College District has met its initial burden. [¶] Plaintiff has failed to raise a triable issue of material fact, and the motion for summary adjudication [of] issues is granted as to Compton Community College District."

As we have discussed above, the trial court erred as a matter of law in concluding the District was not plaintiffs' employer. The remainder of the trial court's oral ruling, in our view, falls short of Code of Civil Procedure section 437c, subdivision (g)'s requirement that ". . . [u]pon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order." (Code Civ. Proc., § 437c, subd. (g).)

In their opening brief, plaintiffs recount numerous incidents (with citations to declarations submitted in opposition to the motion below) of alleged sexual harassment and discrimination. Accordingly, the record is at odds with the trial court's statement that plaintiffs admitted to not being sexually harassed. In addition, the District in its respondent's brief fails to defend the trial court's summary adjudication of the sex discrimination/harassment claim on any basis other than the erroneous determination that the District was not the plaintiffs' employer.

Given the conflict between the record and the trial court's explanation for its ruling, the trial court's erroneous determination that the District was

not plaintiffs' employer, and the lack of any evidentiary support for the trial court's ruling, we are compelled to conclude the trial court erred as a matter of law in granting summary adjudication on the sex discrimination/harassment claim.

### D. *Plaintiffs' Emotional Distress Claim Against the District*

For reasons similar to those stated above, we conclude the trial court erred as a matter of law in granting summary adjudication on the intentional infliction of emotional distress claim. Again, the record contains no written explanation of the trial court's ruling. In its oral statement, the trial court stated: "As to the fifth cause of action for intentional infliction of emotional distress, the plaintiffs did not address that cause of action in their paper and, with a lack of employment relationship, that cause of action—the defense, Compton Community College District, has met its initial burden and plaintiffs have failed to raise a triable issue of material fact. Summary adjudication is granted as to the fifth cause of action."

Again, the record is at odds with the trial court's explanation. In their opposition to the District's separate statement of undisputed facts, plaintiffs contended they "were subject[ed] to extreme and outrageous conduct which caused them severe emotional distress" and cited to exhibits and declarations that support their contention. In addition, the District's respondent's brief fails to defend the trial court's summary adjudication of the emotional distress claim on any basis other than the erroneous determination that the District was not the plaintiffs' employer.

Given the conflict between the record and the trial court's explanation for its ruling, the trial court's erroneous determination that the District was not plaintiffs' employer, and the lack of any evidentiary support for the trial court's ruling, we are compelled to conclude the trial court erred as a matter of law in granting summary adjudication on the emotional distress claim.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 954.

IV

DISPOSITION

On plaintiffs' appeal from the summary judgment in favor of the District, we reverse the summary judgment and award plaintiffs their costs. On plaintiffs' appeal from the summary judgment in favor of the Personnel Commission, we dismiss the appeal as moot and award plaintiffs their costs.

On defendants' cross-appeal, we affirm the order denying the motion for attorney fees and award plaintiffs their costs.

Spencer, P. J., and Mallano, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied June 15, 2005.